### L. V. LONG v. GORDON TRANTHAM AND WIFE, HELEN TRANTHAM.

(Filed 18 September, 1946.)

**Estoppel § 6d—Defendants held bound by equitable estoppel in pais by conduct which would make denial of existence of fact unjust to plaintiff.**

> Three separate landowners filed a petition for the establishment of a cartway over the lands of respondents, setting out the necessity of egress to and ingress from a public road to "their property" and that the most economical route was an old cartway across the lands of respondents, which respondents had closed. The county commissioners so established the cartway. The old cartway ran across the land of respondents and two of petitioners and served the lands of all three. Thereafter two of the petitioners sold their lands to respondents, who again obstructed the cartway. The third petitioner, who owned the land furthest from the public road, instituted this action to compel the removal of the obstruction. *Held:* The other petitioners would be estopped to deny plaintiff the use of the old road across their lands to get to the cartway established across the lands of respondents, and respondents, being in privity of title to them, are likewise estopped.

APPEAL by plaintiff from *Nettles, J.,* at March Civil Term, 1946, of BUNCOMBE.

Civil action for mandatory injunction for removal of obstruction of cartway and for permanent injunction against interference of use of cartway.

Plaintiff alleges in his complaint substantially this factual situation: Plaintiff on the dates hereinafter stated owned and now owns a 10-acre tract of land in Fairview Township, Buncombe County, North Carolina, which does not abut on any public road. Adjoining it, and between it and the nearest public road—the Brush Creek public road—there is land owned by defendants. As the only means of ingress and egress to and from said land of plaintiff across intervening lands to the public road, there was an old road used by plaintiff, "his friends, neighbors and acquaintances," and his predecessors in title "always" or "for 50 years or more." In the fall of 1943, the defendants obstructed same or caused

it to be obstructed by constructing a fence across same. Whereupon, on 13 October, 1943, in a proceeding instituted upon petition of "P. S. Bagwell, Woodrow Dillingham and L. V. Long" (the last being plaintiff in present action), *v.* "Gordon Trantham and Mrs. Gordon Trantham" (present defendants), the Board of Commissioners of Buncombe County entered a judgment establishing "a cartway from the petitioners' property to the Brush Creek Road across the property of the respondents, to be located along the line of the present road as the same now runs, or did run across the Trantham property before it was obstructed with fence and otherwise," and assessed damages at $25.00 to be paid by petitioners to respondents, which amount has been tendered by plaintiff and refused by respondents, and then paid into the office of the Clerk of Superior Court for the use and benefit of the respondents. Thereafter, plaintiff requested the respondents to remove the obstruction from the cartway so that he could use same. Nevertheless, the defendants have failed to remove the fence. The location of the cartway so established is well known and defined through the property of the defendants to the public road and the obstruction of it is unlawful.

Defendants, answering, deny the material allegations of the complaint and as further answer aver that in the purported proceedings of the Board of Commissioners of Buncombe County "no attempt was made to lay out a cartway over the lands of P. S. Bagwell and Woodrow Dillingham, or any of said petitioners; that prior to the date of the institution of this action, the defendants herein purchased the lands of the said P. S. Bagwell and Woodrow Dillingham, and, in the event the court should find that there was a lawful cartway laid out over the lands owned by the defendants, at the date of said purported proceedings, that the same could not exceed in length 250 feet" across the lands then owned by defendants, and in no event could same be constructed to reach the lands of the petitioners.

Plaintiff in reply denies the averments of the further answer of defendants and alleges that the petition for cartway instituted before the Board of Commissioners was in the name of R. W. Dillingham, P. S. Bagwell and L. V. Long as petitioners, and was for a cartway to the Brush Creek public road and was signed and executed by all of said petitioners; that Dillingham and Bagwell, by their action in joining with plaintiff in the petition and requesting the establishment of the cartway at a definite location to the Brush Creek Road, consented and acquiesced in a cartway over their lands to the land of the plaintiff, and, by so doing, are estopped to deny the existence of a cartway over and across their said lands to the plaintiff's land, and the defendants having actual knowledge of the proceeding and its contents, and standing in privity of title to Dillingham and Bagwell, are likewise estopped to deny the existence of a cartway over the lands which Dillingham and Bagwell

owned at date of the petition; and that the original petition, notice, order and other papers filed in said proceeding before said commissioners are made a part of the reply and are pleaded as an estoppel to the defendants' further answer and defense.

Upon the trial in the court below plaintiff offered evidence, documentary and oral, tending to show among other things these facts:

(1) That in pertinent part the original petition to the Board of Commissioners of Buncombe County for the cartway, the petitioners R. W. Dillingham, P. S. Bagwell and L. V. Long set forth their ownership of land in Fairview Township, Buncombe County, North Carolina, "and that there is no public road, cartway or right of way leading from their property to any public road, other than the one road that has served this property for the past 25 years and at present time is closed"; that for them to enjoy the use of their property it is necessary for a cartway to be established leading from their property to a public road; "that the most economic route which could be followed in the opinion of the petitioners in the establishment of a cartway would be to open the present road which has been closed"; and pray that "in accordance with Chapter 328 of Public-Local Laws of 1923," the board "take such action as is necessary to establish a cartway to their property." (2) That, after notice and hearing, the Board of Commissioners established "a cartway from the petitioners' property to the Brush Creek Road across the property of the respondents, to be located along the line of the present road as the same now runs, or did run, across the Trantham property before it was obstructed by fence and otherwise," and "as damages for the laying out of this cartway across the lands of the respondents" assessed $25.00 "to be paid by the petitioners to the respondents," and adjudged that "upon payment of the damages aforementioned by the petitioners to the respondents, the right of the petitioners to use and enjoy the benefits of said cartway shall be consummate." (3) That at the time the petition was filed and the order of the board entered for the cartway as above stated, plaintiff L. V. Long individually owned a 10-acre tract of land, and east of it was a tract owned by Woodrow Dillingham and P. S. Bagwell, and immediately east of the Dillingham and Bagwell tract the defendants Trantham owned a tract extending east to the Brush Creek Road; that the old road extended from Brush Creek Road in front of the Trantham house across the Trantham land, through the Dillingham and Bagwell land and "onto" the land of plaintiff; and that the cartway laid off in the order of the Board of Commissioners was along this old road.

Plaintiff testified without objection that "the cartway begun in front of Mr. Trantham's house on the opposite side of the Brush Creek Road, and went through his land and through Dillingham's and Bagwell's up to my property and on out into the field, it is an old road . . . Woodrow Dillingham, P. S. Bagwell and I were working together as petitioners to

secure the laying off and establishment of this cartway by the Board of County Commissioners,—I meant the cartway as described in the papers introduced. Gordon Trantham . . . after this cartway was established, purchased the Dillingham and Bagwell property. After he purchased it he put up another fence nearly at my line; neither of those fences has ever been removed."

Defendants introduced as evidence the deed from Woodrow Dillingham and wife and Bagwell and wife dated 18 March, 1944, which contained full covenants of seizin, right to convey, freedom from encumbrances and general warranty.

The court allowed motion for judgment as of nonsuit at close of all the evidence, and rendered judgment in accordance therewith.

The plaintiff excepted, assigned error, and appeals to the Supreme Court.

*Don C. Young for plaintiff, appellant.*
*J. W. Haynes for defendant, appellee.*

WINBORNE, J. Decision on this appeal requires consideration only of plaintiff's exception to the judgment as of nonsuit entered in the trial court. This exception is pivoted on the question as to whether Dillingham and Bagwell were equitably estopped by the petition and judgment in the cartway proceedings from thereafter asserting that their co-petitioner L. V. Long was not entitled to cross their land on the old road to get to the land of Trantham, over which clearly the Board of Commissioners laid off and established cartway. They are precluded if their conduct would make such assertion obviously unjust to Long. The facts revealed in the record lead to an affirmative answer to the question. See *Thomas v. Conyers,* 198 N. C., 229, 151 S. E., 270; *Henning v. Warner,* 109 N. C., 406, 14 S. E., 317; *Harris v. Carter,* 189 N. C., 295, 127 S. E., 1; *McNeely v. Walters,* 211 N. C., 112, 189 S. E., 114; *In re Young,* 222 N. C., 708, 24 S. E. (2d), 539; *McDaniel v. Leggett,* 224 N. C., 806, 32 S. E. (2d), 602.

The applicable principle is stated by *Adams, J.,* in *Thomas v. Conyers, supra,* in this manner: "Equitable estoppel *in pais* owes its origin and development to the notion of justice promulgated by courts of chancery. It embraces estoppel by conduct which rests upon the necessity of compelling the observance of good faith . . . 'This estoppel arises when any one, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.' "

"The doctrine of equitable estoppel is based on an application of the golden rule to the every day affairs of men. It requires that one should do unto others as, in equity and good conscience, he would have them do unto him, if their positions were reversed . . . Its compulsion is one of fair play." *Stacy, C. J.,* in *McNeely v. Walters, supra.*

In the light of this principle and bearing in mind that the land of Long was separate and apart from that of Dillingham and Bagwell, it is significant that in the joint petition of Dillingham and Bagwell and Long they pray for a cartway to "their property," and they say that "their property" has been served for 25 years by the road that was then closed and which they sought to have opened. The words "their property" as so used necessarily included the separate property of Long as well as that of Dillingham and Bagwell. Moreover, the petitioners jointly say that in their opinion the most economical route for the cartway "would be to open the present road that has been closed." This is tantamount to saying that the old road as it ran from Long's land across that of Dillingham and Bagwell served both, and that the obstacle in the way was the obstruction placed by Trantham. Under these circumstances it would be manifestly unjust to Long for them to deny to him the use of the old road across their land to get to the cartway established across Trantham's property. This they may not do. The defendants Trantham having thereafter purchased the land of Dillingham and Bagwell stand in privity of title to them and would likewise be estopped to deny the right of Long to use the old road. See *Dillingham v. Gardner,* 222 N. C., 79, 21 S. E. (2d), 898.

In the light of these principles the judgment of nonsuit is
Reversed.